# FOR PUBLICATION

**FILED & ENTERED**

**SEP 30 2016**

**CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Ogier        DEPUTY CLERK**

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re: | Case No.: 1:12-BK-10986-MB |
| ALLANA BARONI, | Chapter 11 |
| Debtor. | Adv. Proc. No.  1:13-AP-01071-MB |
| ALLANA BARONI, | **OPINION RE MOTION FOR ATTORNEYS' FEES [DKT. 73]** |
| Plaintiff, | |
| vs. | |
| WELLS FARGO BANK, N.A., AS TRUSTEE FOR STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-17, | |
| Defendant. | |

1

# I. INTRODUCTION

In April 2013, individual debtor Allana Baroni obtained confirmation of her second amended chapter 11 plan (the "Plan"). Case Dkt. 423. On the day of the plan confirmation hearing, but several weeks before entry of the confirmation order, Allana[1] filed this adversary proceeding, objecting to a secured claim asserted by Wells Fargo, N.A. ("Wells Fargo") in the approximate amount of $800,000. Adv. Dkt. 1. After almost two years of litigation, the court entered summary judgment in favor of Wells Fargo. Adv. Dkt. 69.

Shortly thereafter, Wells Fargo filed a motion seeking attorneys' fees pursuant to a fee-shifting provision in the prepetition loan documents on which Wells Fargo asserted its claim. Adv. Dkt. 73 (the "Fee Motion"). Wells Fargo seeks total fees and costs of $50,620.76. Adv. Dkt. 73, 105 & 141. At an initial hearing on May 13, 2015, the court indicated its intention to grant the attorneys' fee request in favor of Wells Fargo—the prevailing party in the adversary proceeding—for the reasons stated on the record. The court, however, requested supplemental briefing on the question of *how* the fee award should be implemented and has held several additional hearings since then.

Specifically, the court asked the parties whether the award should be (i) added to the unsecured portion of Wells Fargo's allowed prepetition claim (i.e., subject to treatment and discharge under the confirmed Plan), or (ii) payable in full directly by Allana (i.e., *not* subject to such treatment and discharge). The dilemma presented stems from the fact that Wells Fargo's attorneys' fee entitlement arises under a *prepetition* contract, but nearly all of the fees comprising that award were incurred *postpetition*—indeed *postconfirmation, i.e.,* after entry of the order confirming the plan.

Allana argues that the attorneys' fee award should be treated as part of Wells Fargo's prepetition claim, relying principally on *SNTL Corp. v. Ctr. Ins. Co. (In re SNTL Corp.)*, 571 F.3d

---

[1] For the sake of clarity, we refer to Allana and her husband James Baroni by their first names. No disrespect is intended.

2

826 (9th Cir. 2009).  In *In re SNTL Corp,* the court held that a creditor's attorneys' fee award arising out of a prepetition agreement was properly treated as a prepetition claim, even though the attorneys' fees were incurred litigating *after* confirmation of the debtor's chapter 11 plan.  *Id.* at 843-44.   The court relied in part on the Ninth Circuit's "fair contemplation" test to determine that the claim for attorneys' fees arose prior to the petition date, even though the claim was then unliquidated and contingent.

Wells Fargo argues that the attorneys' fee award should not be treated as part of Wells Fargo's prepetition claim, but instead promptly paid by Allana.  Wells Fargo relies on *Boeing N. Am., Inc. v. Ybarra (In re Ybarra)*, 424 F.3d 1018 (9th Cir. 2005) and *Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525 (9th Cir. 1998), in which the court took a different approach, holding that an attorneys' fee award against a chapter 7 debtor should not be treated as a prepetition claim subject to discharge, when the debtor voluntarily commenced the litigation postpetition or "returned to the fray" of litigation commenced prepetition.

For the reasons set forth below, the court concludes that Wells Fargo's attorneys' fee award should be treated as an unsecured, prepetition claim against Allana, subject to treatment and discharge under the Plan.  Although *Siegel* and *In re Ybarra* represent an exception to the general principles recognized in *In re SNTL, Corp.*—i.e., that a postpetition attorneys' fee award based on a prepetition contractual attorneys' fee provision is properly treated as a prepetition claim—the exception recognized in those cases does not apply to the facts and circumstances presented.  As explained below, this conclusion is further supported by the Ninth Circuit's recent decision in *Picerne Const. Corp. v. Castellino Villas, A.K.F. LLLC (In re Castellino Villas, A.K.F. LLC)*, 2016 U.S. App. LEXIS 16360 (9th Cir. 2016) [hereinafter "*In re Castellino Villas"*].

## II. JURISDICTION

The court has jurisdiction over this case, the above-captioned adversary proceeding and the Fee Motion pursuant to 28 U.S.C. § 1334(b).  These matters have been referred to this court pursuant to 28 U.S.C. § 157.  This adversary proceeding and the Fee Motion are core matters pursuant to 28 U.S.C. § 157(b)(2)(A),(B),(O).  The Court finds that it has constitutional authority to enter final judgment on the instant motion.  *See Stern v. Marshall*, 131 S.Ct. 2594 (2011).

3

## III.  FACTUAL AND PROCEDURAL BACKGROUND

A substantial portion of the factual and procedural background relevant to the Fee Motion is summarized in the November 10, 2015 opinion of the Bankruptcy Appellate Panel ("BAP") affirming the court's summary judgment order, which is excerpted here:[2]

> In May 2005, Allana and her husband James purchased a condominium in Henderson, Nevada.  To finance that purchase, the Baronis executed a note in the approximate amount of $675,000 and a deed of trust securing repayment of the note.
>
> . . .
>
> In February 2012, Allana commenced her bankruptcy case by filing a voluntary chapter 13 petition.  Later that same month, she voluntarily converted her case from chapter 13 to chapter 11.  In June 2012, Wells Fargo filed a proof of claim asserting a secured claim in Allana's bankruptcy case in the approximate amount of $800,000.  Wells Fargo attached to the proof of claim the following documents: (i) itemized statements of interest, fees, expenses and charges accrued on the loan; (2) a copy of the Henderson note, which included an indorsement in blank on the face of the note's signature page; (3) a copy of the Henderson deed of trust with a recording stamp reflecting that the deed of trust was recorded in the Clark County Recorder's Office; and (4) a copy of an assignment of deed of trust executed by a Khadija Gulley on behalf of Mortgage Electronic Registration Systems, Inc. (MERS) in favor of Wells Fargo with a recording stamp reflecting that the assignment was recorded in the Clark County Recorder's Office.
>
> In April 2013, Allana obtained an order confirming her second amended reorganization plan.  In relevant part, Allana set forth in her disclosure statement and plan that she disputed and objected to Wells Fargo's proof of claim but that, to the extent the bankruptcy court ultimately allowed any claim secured by the Henderson property, she would pay the holder of that allowed claim in accordance with the terms of her plan.
>
> That same month, Allana filed her complaint against Wells Fargo.  In the complaint, Allana in essence alleged that Wells Fargo's proof of claim did not establish that Wells Fargo is the holder of the Henderson note, the owner of the Henderson note, or the successor to the beneficiary under the Henderson deed of trust.  Allana further complained that the alleged sale of the Henderson note to Wells Fargo was inconsistent with information she had received from third parties regarding who is the note's owner and who is the note's investor and that the alleged sale violated the terms of the trust agreement pursuant to which Wells Fargo supposedly was acting as trustee.  Allana also posited that the assignment of deed of trust was invalid because: (1) there was no proof the assignment's signatory --- Khadija Gulley – was authorized to execute the assignment on behalf of MERS; and (2) the timing and manner of the assignment violated the terms of the trust agreement.

---

[2]  BAP Case No. CC-14-1579-KuDTa.

4

Based on these allegations, Allana's complaint included a claim for declaratory relief seeking a judicial determination as to whether Wells Fargo's proof of claim should be allowed or disallowed and whether that claim was secured or unsecured. The complaint also included a claim for relief alleging that Wells Fargo would be unjustly enriched if its claim were allowed in the absence of proof that Wells Fargo was entitled to enforce the Henderson note and deed of trust. The complaint's third claim for relief under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., alleged that Wells Fargo had falsely represented that it was entitled to enforce the Henderson note and deed of trust by filing the proof of claim. Allana's fourth and final claim for relief, based on all of the same allegations, set forth a claim under California's unfair competition law, Cal. Bus. & Profs. Code § 17200, et seq.

In September 2014, Wells Fargo filed its summary judgment motion on the complaint. After receiving briefs from the parties and holding a hearing at which the parties submitted without oral argument, the court granted summary judgment to Wells Fargo. The BAP aptly summarized the court's analysis:

> According to the court, Wells Fargo had established that it had possession of the original Henderson note, indorsed in blank, so Wells Fargo was a "person entitled to enforce" the Henderson note under Uniform Commercial Code § 3-301 and hence had standing to file a proof of claim based on the Henderson note. Even if Wells Fargo had not qualified as the holder of the note, the court reasoned, Wells Fargo had established that it possessed the note as trustee of a securitization trust and that Wells Fargo owned the Henderson note as trustee of that trust. Thus the court held that Wells Fargo had alternately established that it was "a nonholder in possession of the instrument who has the rights of a holder" under Uniform Commercial Code § 3-301.
>
> Based on its analysis of Wells Fargo's rights in relation to the Henderson note, the bankruptcy court concluded that, as a matter of law, Allana could not prevail on any of her claims for relief. As an additional ground for denying relief on Allana's unjust enrichment claim, the bankruptcy court held that Allana's action was an action based on contract and that unjust enrichment was not available in an action based on contract. As additional grounds for denying relief on Allana's Fair Debt Collection Practices Act claim, the bankruptcy court held that Wells Fargo was not a debt collector within the meaning of the Act, that the Act only applied to consumer debts and that the debt secured by the Henderson property was not a consumer debt.

As noted, Allana appealed the court's summary judgment to the BAP, which affirmed. Allana thereafter appealed to the Ninth Circuit Court of Appeals. The Ninth Circuit appeal is pending, case number 15-60082.

Shortly after the summary judgment was entered, Wells Fargo filed the Fee Motion seeking attorneys' fees pursuant to a fee-shifting provision in the prepetition loan documents on which Wells Fargo asserted its claim. Wells Fargo seeks total fees and costs of $50,620.76. At an initial hearing, the court indicated its intention to grant the attorneys' fee request in favor of Wells

Fargo—the prevailing party in the adversary proceeding—for the reasons stated on the record. The court, however, raised the issue of how such fees would be treated in the case. Specifically, the question presented is whether Wells Fargo's claim for attorneys' fees is a claim that is subject to the discharge and treatment provisions of the plan, or claim that is not subject to those provisions and therefore due and payable by Allana in full.

### IV. STATUTORY BACKGROUND

The provisions of a confirmed chapter 11 plan generally bind the debtor and all of the debtor's creditors, regardless of whether the creditors' claims are impaired under the plan or whether or not the creditors have accepted the plan. *See* 11 U.S.C. § 1141(a). Except as otherwise set forth in the plan or order confirming the plan, the confirmation order generally vests in the debtor all of the property of the estate free and clear of all claims, see 11 U.S.C. § 1141(b), (c)[3] and

> [d]ischarges the debtor from any debt that arose before the date of such confirmation . . . whether or not—
>
> (i)   a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
>
> (ii)  such claim is allowed under section 502 of this title; or
>
> (iii) the holder of such claim has accepted the plan . . . .

11 U.S.C. § 1141(d)(1)(A).[4] Typically, this discharge is described as being given "in exchange" for the treatment of pre-confirmation claims provided and other rights afforded creditors under the chapter 11 plan. *See, e.g.*, *In re Asarco LLC*, 420 B.R. 314, 371 (S.D. Tex. 2009); *In re Trans World Airlines*, 185 B.R. 302, 322 (Bankr. E.D. Mo. 1995).

---

[3] Bankruptcy Code sections 1141(a) and (c) are subject to certain other exceptions set forth in subsections 1141(d)(2) and (d)(3), but those exceptions are not applicable here. *See* 11 U.S.C. §§ 1141(a), (c), (d).

[4] *See In re Castellino Villas*, 2016 U.S. App. LEXIS 16360 at *9 n.3 (chapter 11 discharge applies to debts arising before confirmation, although cases sometimes refer the discharge of prepetition debts).

In a chapter 11 case for an individual, subject to certain exceptions not applicable here,[5] the discharge applies to the same universe of claims (i.e., those that arise before the date of confirmation) and operates in the same manner, but the granting of the discharge is delayed.  In an individual chapter 11 case, "unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan." 11 U.S.C. § 1141(d)(5).

The discharge in a chapter 7 case operates differently.  *See generally* 11 U.S.C. § 727.  First, the discharge in a chapter 7 case generally applies only to debts that arise before the entry of an order for relief or are determined under Bankruptcy Code section 502.  11 U.S.C. § 727(b).[6]  In a voluntary chapter 7 case, the debtor's filing of a voluntary petition (i.e., the commencement of the case) is deemed to constitute an order for relief.  11 U.S.C. § 301.  The discharge in a voluntary chapter 7 case, therefore applies only to debts that arise prepetition or deemed prepetition under Bankruptcy Code section 502.[7]

Second, the court is required in a chapter 7 case to issue a discharge upon the expiration of the time fixed for objecting to the debtor's discharge or for filing a motion to dismiss the case under Federal Rule of Bankruptcy Procedure 1017(e), unless one of several prerequisites has not been satisfied.  *See* Fed. R. Bankr. P. 4004(c)(1).  Thus, issuance of the discharge in chapter 7 is not tied to the confirmation or implementation of any plan.  Nor is the distribution of any assets.  To the extent there are estate assets to distribute in a chapter 7 case, they are distributed pursuant to

---

[5] *See* 11 U.S.C. § 1141(d)(6).

[6] *See, e.g.,* 11 U.S.C. §§ 502(e)(2)(g), 502(f), 502(h), 502(i).

[7] In an involuntary case, an order for relief is not entered until and unless the court determines it should do so, either because the alleged debtor fails to answer the involuntary petition, or after a trial on the merits.  11 U.S.C. § 303(h).  Thus, in an involuntary case, a claim that arises prior to the order for relief is *not* synonymous with a claim that arises before the commencement of the case—although certain pre-order-for-relief claims are determined as if they were prepetition claims.  *See* 11 U.S.C. § 502(f).

the priority scheme set forth in Bankruptcy Code section 726, not pursuant to a plan. 11 U.S.C. § 726.

Under both chapter 7 and chapter 11, the term "debt" means "liability on a claim." 11 U.S.C. § 101(12). The term "claim" is broadly defined to mean "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secure, or unsecured. . . ." 11 U.S.C. § 101(5)(A). "A claim is 'contingent' when 'the debtor will be called upon to pay [it] only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor.'" *In re Castellino Villas,* 2016 U.S. App. LEXIS 16360 at *9 (quoting *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir. 1987)). "A claim is 'unliquidated' when it is not 'subject to ready determination and precision in computation of the amount due.'" *Id.*

Whether a claim exists generally is determined as of the date of the filing of the bankruptcy petition, irrespective of whether the claim is contingent or unmatured at the time. *See* 11 U.S.C. § 502(b)(1); *In re SNTL Corp.*, 571 F.3d at 838. "[T]he Bankruptcy Code utilizes [the] 'broadest possible definition' of claim to ensure that 'all legal obligations of the debtor, *no matter how remote or contingent,* will be able to be dealt with in the bankruptcy case." *In re SNTL Corp.*, 571 F.3d 826, 838 (quoting *Cal. Dep't of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 929-30 (9th Cir. 1993)).

Accordingly, "contingent claims [existing as of the petition date] cannot be disallowed simply because the contingency occurred postpetition." *Id.* Absent some other basis to disallow a claim under section 502(b), the court "must allow it." *Id.* (quoting *Wells Fargo Fin. Acceptance v. Rodriguez (In re Rodriguez)*, 375 B.R. 535, 545 (B.A.P. 9th Cir. 2007) and citing *Travelers Cas & Sur. Co. of Am. V. Pacific Gas & Elec. Co.*, 549 U.S. 443 (2007)).

**V.  LEGAL ANALYSIS**

**A. The Fair Contemplation Test and Attorneys' Fees Claims**

The determination of *when* a claim arises is central to determining whether it is subject to discharge and entitled to treatment under a chapter 11 plan. To make this determination, the Court must look to federal law. *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1000 (9th Cir.

8

2006). "It is well-established that a claim is ripe as an allowable claim in a bankruptcy proceeding even if it is a cause of action that has not yet accrued." *Cool Fuel v. Board of Equalization (In re Cool Fuel, Inc.)*, 210 F.3d 999, 1006 (9th Cir. 2000) (citing *In re Jensen*, 995 F.2d 925, 929 (9th Cir. 1993) and other authorities). Thus, a contingent claim may be discharged in bankruptcy, even if a right to payment on that claim does not ripen until after commencement of the bankruptcy case. *See In re Jensen*, 995 F.2d at 928, 931.

In *In re Jensen*, the Ninth Circuit Court of Appeals held that once the California Department of Health Services ("Department") had discovered a serious environmental hazard on the debtors' property, its claim against the debtors was ripe for filing under the Bankruptcy Code as a prepetition, contingent claim, even though its CERCLA cause of action had not yet accrued. *Id*. After the Jensens' bankruptcy case was closed, the Department filed a claim. The court held it was too late. The court found that because the Department's right to payment under CERCLA originated from the Jensens' "prepetition conduct" of which the Department had knowledge before the petition was filed, it could be "fairly contemplate[]" that it would result in a CERCLA claim. *Id*. at 930-31.

In *In re SNTL Corp.*, the Ninth Circuit (adopting the opinion of the Bankruptcy Appellate Panel verbatim) applied the principles of *In re Jensen* to a claim for attorneys' fees incurred postpetition that arose from a prepetition guarantee agreement between the debtor and a creditor. Pursuant to a confirmed chapter 11 joint plan of reorganization, the debtors appointed a litigation trustee to prosecute certain claims, rights and causes of action, and to initiate and oversee actions pertaining to the allowance and payment of claims, including objections to proofs of claim filed in the case. *In re SNTL Corp.*, 571 F.3d at 830. One of the proofs of claim filed in the case was that of an insurance company asserting (i) a debt under a prepetition guarantee agreement, and (ii) a contractual claim for attorneys' fees related to the enforcement of that debt (including fee amounts that would be incurred postpetition). *Id.* at 830, 832.

The litigation trustee objected to the proof of claim—both as to the guarantee debt and the related claim for attorneys' fees. With respect to the attorneys' fees specifically, the litigation trustee argued (i) that the insurance company could not have an allowed claim for attorneys' fees

9

because the underlying guarantee claim was not a secured claim within the meaning of the Bankruptcy Code, and (ii) that the insurance company could not recover attorneys' fees incurred at any time after the petition date because the amount of such fees could not be determined or calculated "as of the petition date," as contemplated by Bankruptcy Code section 502(b). The bankruptcy court sustained the objections of the litigation trustee and disallowed the insurance company's claims.

The Ninth Circuit reversed, holding that both the guarantee claim and the attorneys' fee claim should be allowed. The court's conclusions with respect to the attorneys' fee issue are particularly significant here. First, the court of appeals rejected the argument of the litigation trustee that a claim for contractual (or statutory) attorneys' fees may be allowed in bankruptcy only if the claim arises in connection with a secured claim. *In re SNTL Corp.*, 571 F.3d at 839-43, 844-45.

Second, and most important to the present matter, the court rejected the proposition that a prepetition claim for attorneys' fees incurred *postpetition* cannot be allowed. *Id.* at 843-44. The court held that this would be inconsistent with the broad definition of "claim," which includes a right to payment that is, as of the petition date, contingent and unliquidated. *Id.* (citing 11 U.S.C. § 101(5)(A)). Thus, the court held that a prepetition right to attorneys' fees may be an allowed prepetition claim, even if the fees are incurred postpetition. *Id.* The court specifically found that this conclusion was "consistent with the Ninth Circuit's 'fair contemplation' test. . . :"

> Postpetition fees can be fairly contemplated when the parties have provided for them in their contracts and thus are contingent claims as of the petition date. They cannot be disallowed merely because they are contingent. As stated by one leading commentator: "In general, if the creditor incurs the attorneys' fees postpetition in connection with exercising or protecting a prepetition claim that included a right to recover attorneys' fees, the fees will be prepetition in nature, constituting a contingent prepetition obligation that became fixed postpetition when the fees were incurred.

*Id.* at 844 (citations omitted).

**B. The Exception Recognized in *Siegel and In re Ybarra.***

The Ninth Circuit has held on two occasions that a prepetition right to attorneys' fees incurred postpetition should not be treated as a prepetition claim. *See In re Ybarra*, 424 F.3d 1018;

10

*Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525. These decisions precede the decision *In re SNTL Corp.* and do not specifically refer to the fair contemplation test. Nevertheless, as discussed in Section C *infra*, the Ninth Circuit has since harmonized these decisions with its fair contemplation test. *See In re Castellino Villas*, 2016 U.S. App. LEXIS 16360, at *15-*16 (9th Cir. 2016).

In *Siegel*, the debtor defaulted on two real estate loans and thereafter filed a chapter 7 liquidation case. Freddie Mac, the lender, filed two proofs of claim, as to which no objections were filed. *Id.* at 528. As a result, each of those claims was deemed allowed. *Id.* at 525; 11 U.S.C. § 501(a). The debtor received a discharge of those claims, but the debtor subsequently brought a state court suit (later removed to federal district court) against the lender, arguing that the lender breached the deed of trust. *See* 143 F.3d at 527-28. The district court granted the lender summary judgment, finding that determination of the rights of the parties under the loan documents was *res judicata*, and awarding attorneys' fees to the lenders pursuant to those agreements.

On appeal, the debtor argued that the attorneys' fee claim had been discharged in his chapter 7 case because (i) the lender's right to collect attorneys' fees (albeit contingent and unliquidated) existed prior to the commencement of that case, under the prepetition loan documents, and (ii) the discharge granted in his case applied to "all debts that arose before the order for relief" in that case. *Id.* at 531-32; *see also* 11 U.S.C. § 727(b). The court of appeals rejected this argument.

The court concluded it would be unfair to treat the attorney's fee claim under the prepetition loan documents as a prepetition claim (and therefore subject to the chapter 7 discharge), when the debtor sought to use the very same loan documents post-discharge to pursue litigation against the lender:

> This is a case where the debtor, Siegel, had been freed from the untoward effects of contracts he had entered into. Freddie Mac could not pursue him further, nor could anyone else. He, however, chose to return to the fray and use the contract as a weapon. It is perfectly just, and within the purposes of bankruptcy, to allow the same weapon to be used against him.
> . . .
> [I]n fine, Siegel's decision to pursue a whole new course of litigation made him subject to the strictures of the attorney's fee provision. In other words, while his bankruptcy did protect him from the results of his past acts, including attorneys' fees

11

1  associated with those acts, it did not give him carte blanche to go out and commence new litigation about the contract without consequences.

2  *Id.* at 533-34.

3  In *In re Ybarra*, the Ninth Circuit addressed a similar situation. There, the debtor commenced an employment discrimination suit against her employer in state court, eight months before the debtor filed her chapter 7 case. 424 F.3d at 1020. The chapter 7 trustee for the debtor's estate negotiated a settlement with employer, which was approved by the bankruptcy court, resulting in dismissal of the state court lawsuit. *Id.* Notwithstanding that dismissal, the debtor took affirmative actions "to revive the state suit." *Id.* at 1020, 1027. The debtor claimed her cause of action against the employer was exempt property, litigated the issue in bankruptcy court, and (after prevailing on appeal), rejected the settlement agreement and "successfully persuaded the state court to set aside the dismissal." *Id.* at 1020. The debtor lost in state court and the employer was awarded attorneys' fees and costs. *Id.* at 1020-21. The employer sought leave to enforce the fee and cost award notwithstanding the debtor's chapter 7 discharge, and the debtor opposed. The bankruptcy court ruled in favor of the employer, but the BAP reversed.

Following its decision in *Siegel,* the Ninth Circuit reversed the BAP, holding that postpetition attorneys' fees are not discharged when "the debtor voluntarily commences litigation or otherwise voluntarily 'returns to the fray.'" *Id.* at 1026. The court explained that "whether attorney fees and costs incurred through the continued prosecution of litigation initiated pre-petition may be discharged depends on whether the debtor has taken affirmative post-petition action to litigate a prepetition claim and has thereby risked the liability for these litigation expenses." *Id.* The court of appeals concluded that by actively reviving the state suit, Ybarra "returned to the fray" such that the employer's claim for attorneys' fees and costs should not be treated as a prepetition debt subject to discharge.

**C.  *In re Castellino Villas* Recognizes the Limits of *Siegel and In re Ybarra.***

In *In re Castellino Villas*, the Ninth Circuit harmonized the fair contemplation test and its decision in *In re SNTL Corp.,* on the one hand, with its decisions in *Siegel* and *In re Ybarra*, on the other hand. *See In re Castellino Villas, A.K.F. LLC*, 2016 U.S. App. LEXIS 16360 at *8-*16. Although neither *Siegel* nor *In re Ybarra* specifically mention the fair contemplation test, the court

1  in *In re Castellino Villas* describes those cases as instances in which the attorneys' fee award was

2  simply not within the "fair contemplation" of the parties. *Id.* at *12.

> The analysis in these cases is consistent with our fair contemplation test. When parties engage in prepetition litigation that could lead to an award of attorneys' fees, they may fairly contemplate that the prevailing party will be awarded those fees. Therefore, a creditor's contingent claim to such fees is discharged in bankruptcy, even if some fees are incurred post-petition. But when the prepetition litigation is resolved in bankruptcy so that any claim (including a contingent claim for attorneys' fees) against the debtor would be discharged, we cannot say that the debtor's affirmative action to commence what amounts to "a whole new course of litigation," *Siegel*, 143 F.3d at 534, was in the fair contemplation of the parties when the debtor filed a bankruptcy petition. Rather, the debtor's decision to eschew the fresh start provided by bankruptcy and engage in new litigation is more akin to post-petition conduct that, by definition, was not in the fair contemplation of the parties prepetition. *Cf. O'Loghlin v. County of Orange*, 229 F.3d 871, 875 (9th Cir. 2000) (holding that a debtor who engages in postpetition illegal discriminatory conduct can be held liable for that conduct, even if claims for similar illegal discriminatory conduct occurring before the bankruptcy were discharged).

*In re Castellino Villas*, 2016 U.S. App. LEXIS 16360 at *15-*16.

The facts in *In re Castellino Villas* are straightforward. At the time the debtor ("Castellino") filed its chapter 11 case, its creditor ("Picerne") was in the process of foreclosing on a mechanic's lien against Castellino's property. *Id.* at *2-*4. Picerne was granted relief from the automatic stay to continue prosecuting that action, in which Castellino disputed the validity, priority, and amount of Picerne's lien. *Id.* at *4. In connection with a chapter 11 plan, Castellino and Picerne entered into a settlement agreement. *Id.* at *4-*5. Among other things, the settlement agreement provided that (i) if Picerne was successful in the state court litigation, it would receive certain payments from a trust account that Castellino would fund, and (ii) the parties would mutually release one another from any and all existing claims. *Id.* at *5. The settlement did not address attorneys' fees. *Id.* The settlement was approved, the plan modified to include the agreed-upon terms, the plan confirmed, and Picerne's prepetition claims discharged under the plan. *Id.*

The parties thereafter completed the state court litigation, and Picerne won. *Id.* at *5-*6. Based on its victory, Picerne sought an attorneys' fee award under its prepetition agreement with Castellino, but the bankruptcy court denied its request. *Id.* at *6. The bankruptcy court held that Picerne's claim for attorneys' fees (i) existed on the petition date as a contingent and unliquidated

claim and was discharged or (ii) was released under the parties' settlement agreement. Picerne appealed.

Relying on *In re Ybarra*, Picerne argued on appeal that by litigating the state court action after obtaining a discharge, Castellino "returned to the fray" and opened itself up to liability for attorneys' fees incurred after the discharge. *Id.* at *7. Specifically, Picerne argued that where a debtor continues to litigate a prepetition claim after discharge, and takes any affirmative steps beyond what is necessary to extricate itself from the litigation, the debtor has chosen to "return to the fray." *Id.* at *16. Picerne cited the fact that more than seeking to extricate itself from the state court litigation, Castellino brought a motion for summary judgment, opposed Picerne's motion for summary judgment, took party and nonparty discovery, and made a request for attorneys' fees.

The Ninth Circuit rejected Picerne's argument. The court of appeals found that because Picerne was relying on an attorney's fee provision in a prepetition agreement, and because Picerne had commenced the litigation prepetition, Picerne's contingent claim for attorneys' fees arose before both the filing of Castellino's bankruptcy case and confirmation of Castellino's chapter 11 plan. *Id.* at *17. "Further, the preconfirmation settlement agreement between Picerne and Castellino required the parties to complete the state court litigation. Under these circumstances, Picerne could fairly and reasonably contemplate that it would incur attorneys' fees associated with the state court litigation and would have a claim for attorney's fees under the agreement if it prevailed." *Id.* at *18.

The court of appeals expressly "decline[d] to adopt Picerne's expanded reading of *Ybarra* and *Siegel,* which is inconsistent with our fair contemplation test." *Id.*

> Contrary to Picerne's argument, *Ybarra* and *Siegel* are not implicated here. Unlike the debtors in those cases, Castellino was not relieved of liability under its agreement with Picerne and given a fresh start by its discharge in bankruptcy. Rather, the parties agreed that Picerne's action against Castellino would continue after discharge. Indeed, in order to obtain Picerne's agreement to withdraw its objections to the plan of reorganization, Castellino and Picerne agreed to litigate Picerne's mechanic's lien claim to conclusion, and the terms of the plan of reorganization were conditioned on the results of the litigation. Nor did Castellino "pursue a whole new course of litigation," after receiving a discharge.

*Id.* at *18-19. As the court explained further, "[T]he pertinent question is whether the right to obtain attorney's fees in the litigation is within the fair contemplation of the parties, and Picerne

14

provides no reason why it would not have fairly contemplated that the parties would proceed with litigation that had not been resolved in bankruptcy." *Id.* at *19.

**D. Application of the Law to the Facts of the Case.**

The outcome of the present dispute is controlled by *In re SNTL Corp.* and *In re Castellino*. As in those cases, Wells Fargo held a contingent and unliquidated claim for attorneys' fees under its prepetition loan documents with Allana, at the time she filed her chapter 11 petition. Wells Fargo's claim for attorneys' fees became liquidated and non-contingent following confirmation of her plan, which is when the attorneys' fees were incurred and a fee award granted. But this does not alter the fact that the claim arose from a prepetition agreement and existed before confirmation of the Plan (albeit contingent and unliquidated). *See In re Castellino Villas*, 2016 U.S. App. LEXIS 16360 at *17; *In re SNTL Corp.*, 571 F.3d at 843-44. As such, Wells Fargo's claim for attorneys' fees is a claim subject to discharge under the Plan, pursuant to Bankruptcy Code section 1141(d)(1)(A).

That Allana's objection to the Wells Fargo proof of claim was litigated largely after entry of the order confirming the Plan is of no moment. The Plan (and the accompanying disclosure statement) put Wells Fargo on notice that Allana objected to the Wells Fargo claim, indicated that the claim would be litigated after confirmation of the Plan, and specifically provided for alternative treatment under the Plan, depending on the outcome of the litigation. Under the Plan, Allana must make payments into a trust account in amounts specified in the Plan. If the Court sustained Allana's objection, and disallowed the Wells Fargo claim, the Plan provides that the money would be returned to Allana. If the Court denied the objection, and allowed the Wells Fargo claim, the money would go to Wells Fargo, as would future payments in accordance with the terms of the Plan.

In other words, Wells Fargo could fairly and reasonably contemplate that it would incur attorneys' fees associated with the enforcement of its claim in Allana's case, and that it would have a claim for such attorneys' fees under its prepetition loan documents, at the time the case was commenced. Further, Wells Fargo could fairly and reasonably contemplate prior to plan confirmation that it would incur such fees after plan confirmation because the Plan: (i) advised of

Allana's objection to the Wells Fargo claim, (ii) contemplated that the allowance of the claim would be litigated after plan confirmation, and (iii) provided for alternative treatment depending on the outcome of that litigation.

These facts and circumstances are similar to those in *In re SNTL Corp.* and *In re Castellino.* In *In re SNTL Corp.,* the plan contemplated that a plan trustee could prosecute claims objections and other causes of action after confirmation of the plan. *In re SNTL Corp.*, 571 F.3d at 830, 832. Although the litigation giving rise to the fees occurred after plan confirmation—and therefore after the debtor was discharged under the plan—the court of appeals found that the claim for attorneys' fees was a prepetition claim because it arose (i) under the parties' prepetition agreement and (ii) therefore existed as of the debtor's petition date as a contingent and unliquidated claim. *Id*. at 843-44.

Similarly, in *In re Castellino Villas,* the plan contemplated that the parties would litigate the priority of the creditor's lien in a state court action and provided for alternative treatment depending on the outcome of the litigation. *In re Castellino Villas*, 2016 U.S. App. LEXIS 16360 at *5. Although the plan in that case did not address the issue of attorneys' fees—as is true here— the Ninth Circuit concluded that prior to plan confirmation, the creditor "could fairly and reasonably contemplate that it would incur attorneys' fees associated with the state court litigation and would have a claim for attorney's fees under the agreement if it prevailed." *Id.* at *18. The same result should obtain here, where the plan put Wells Fargo on notice that the litigation over claim allowance would occur post-confirmation.[8]

---

[8] The different results in the chapter 11 cases of *In re SNTL Corp.* and *In re Castellino Villas*, on the one hand, and the chapter 7 cases of *Siegel* and *In re Ybarra,* on the other hand, reflect structural differences between those chapters. Under chapter 11, a plan may provide for "the retention and enforcement by the debtor, the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest," 11 U.S.C. § 1123(b)(3)(B), or "any other appropriate provision not inconsistent with the applicable provisions of this title." 11 U.S.C. § 1123(b)(6). Thus it is not uncommon for a chapter 11 plan to defer the process of objecting to proofs of claim or pursuing affirmative causes of action until the post-confirmation period, in order to expedite the Debtor's emergence from chapter 11 and minimize administrative fees and costs. There are no analogous provisions and no analogous process in chapter 7.

16

1 Unlike in *In re Castellino Villas,* there is no settlement agreement here under which the parties agreed that the claims litigation would occur post-confirmation. The procedure for litigating allowance of the claim is simply baked into the Plan. But this difference is not significant to the analysis. First, it is well-established that a chapter 11 plan is itself a contract between a debtor and its creditors. *See Hillis Motors v.Hawaii Auto.Dealers' Ass'n (In re Hillis Motors)*, 997 F.2d 581, 588 (9th Cir. 1993); *Knupfer v. Wolfberg (In re Wolfberg),* 255 B.R. 879 (B.A.P. 9th Cir. Cal. 2000). Second, the plan is deemed binding on all creditors, regardless of whether they are impaired under the plan or accept the plan. *See* 11 U.S.C. § 1141(a). Third, irrespective of the foregoing, the Plan undeniably put Wells Fargo on notice that allowance of its claim would be adjudicated after confirmation of the Plan.

Wells Fargo argues that Allana "returned to the fray" within the meaning of *Siegel* and *In re Ybarra,* by pursuing litigation against Wells Fargo post-confirmation. But as the court of appeals concluded in *In re Castellino,* this Court concludes those cases "are not implicated here." *Id.* at *18. The court in *Siegel* held that the debtor "returned to the fray" after (i) the debtor failed to object to the lender's claim during his chapter 7 case, (ii) the claim was deemed allowed, (iii) the debtor obtained a discharge of all liabilities under his agreements with the lender, but (iv) then "returned to the fray" by initiating new litigation against the lender based on those documents. Here, the litigation generating attorneys' fees was not initiated after the claims of the creditor were allowed and thereafter discharged in the bankruptcy case. The litigation generating the fees is over the very allowance of the creditor's claim in the bankruptcy case and, as a result, the treatment to which it is entitled under Allana's confirmed chapter 11 plan. Moreover, because this is an individual chapter 11 case, there was no discharge upon confirmation and a discharge has yet to issue. *See* 11 U.S.C. § 1141(d)(5). These circumstances do not raise the sort of fairness concerns that the circumstances did in *Siegel.*

The facts of the instant case are even farther afield of *In re Ybarra*. In that case the debtor took affirmative steps postpetition to revive a prepetition cause of action against her employer, after (i) the chapter 7 trustee for her estate had negotiated a settlement of it, (ii) the court had approved the settlement, and (iii) the state court had dismissed the debtor's prepetition lawsuit.

17

Under those circumstances, the postpetition attorneys' fees incurred by the employer defending the suit were simply not within the fair contemplation of the parties at the time the case was filed (i.e., the cleavage point for claims subject to discharge under chapter 7), *In re Castellino Villas*, 2016 U.S. App. LEXIS 16360 at *12, and permitting the discharge of those fees would have been unfair. Nothing approaching those circumstances is present in the instant case.  Prior to pursuing her litigation against Wells Fargo, Allana did nothing (nor allowed anything to happen) amounting to a resolution or adjudication of Wells Fargo's claims.

The allowance and disallowance of claims is a core bankruptcy matter, *see* 28 U.S.C. §157(B)(2).  That Wells Fargo's claim would be challenged in the bankruptcy case, and would generate attorneys' fees for which it might have a claim under its loan documents, was well within the fair contemplation of the parties both (i) at the petition date and (ii) prior to confirmation of the plan (i.e., the cleavage point for claims subject to discharge under chapter 11).  Moreover, nothing in the circumstances presented suggests that it otherwise would be unfair to permit Wells Fargo's pre-confirmation contingent and unliquidated claim for attorneys' fees be treated and discharged under the plan.  Indeed, because these fees were foreseeable, it was incumbent on Wells Fargo to raise any concerns it had about the treatment and discharge of that claim under the Plan at the time the Plan was confirmed.

Wells Fargo argues that that foregoing analysis is inapt because Allana not only sought to disallow its claims post-confirmation but also sought a recovery against Wells Fargo on affirmative claims for relief.  The Court is not persuaded.  While it is true that Allana's post-confirmation litigation was styled as an adversary proceeding, and sought affirmative relief in addition to disallowance of Wells' Fargo's claim, the gravamen of the complaint was that Wells Fargo did not have standing to enforce its mortgage debt against Allana or the Henderson property.  This was the central premise of all of Allana's affirmative claims, i.e., unjust enrichment, violation of the Fair Debt Collection Practices Act, and violation of California's unfair competition law, and tied to the same core of operative facts. Irrespective, all of these claims are within the contemplation of the Plan and its reservation of rights.   That Wells Fargo might be sued on these related theories was no

18

less within the contemplation of the parties—both on the petition date and prior to confirmation of the plan—than the possibility that Wells Fargo's claim might be disputed.

Wells Fargo would have this Court conclude that literally any litigation commenced postpetition and continued post-confirmation is a "whole new course of litigation," where it pertains to a claim that will be discharged under a plan. But the argument ignores the particular meaning given those terms in *Siegel* and *In re Ybarra*, and the particular circumstances of those cases. Perhaps most importantly, such a conclusion would eviscerate the fair contemplation test, as that test has been applied to contractual and statutory attorneys' fees by the Ninth Circuit. If Wells Fargo's argument were correct, then no attorneys' fee claim that becomes liquidated and non-contingent postpetition or post-confirmation in a chapter 11 case would ever be discharged—a result clearly at odds with the Ninth Circuit's holdings in *In re SNTL Corp.* and *In re Castellino Villas*.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

## VI. CONCLUSION

For all of the foregoing reasons, the Court holds that the attorneys' fee award in favor of Wells Fargo in this adversary proceeding, in the amount of $50,620.76, shall be treated as a prepetition claim, subject to treatment and discharge under Allana's confirmed chapter 11 plan.

###

Date: September 30, 2016

*Martin R. Barash*
Martin R Barash
United States Bankruptcy Judge